Cliff CONNORS, Plaintiff–Appellant,

v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,
Defendant–Appellee.

Docket No. 00–9288.

United States Court of Appeals,
Second Circuit.

Argued June 7, 2001.

Decided Nov. 19, 2001.

Evan S. Schwartz, of counsel, Quadrino & Schwartz, P.C., Garden City, NY (Eve–Lynn Gisonni, of counsel, on the brief), for Plaintiff–Appellant.

Kevin G. Horbatiuk, Russo, Keane & Toner, LLP, New York, NY, for Defendant–Appellee.

Before: McLAUGHLIN and CABRANES, Circuit Judges, and COTE, District Judge.*

COTE, District Judge:

Defendant-appellee Connecticut General Life Insurance Company ("CGLIC" or "defendant") is the administrator of a group disability insurance policy for the former employer of plaintiff-appellant Cliff Connors ("Connors" or "plaintiff"). In 1995, CGLIC found that Connors was no longer "totally disabled" and thus not entitled to continued benefits under the policy. On *de novo* review of the administrative record, the United States District Court

---

* The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

for the Southern District of New York concluded that CGLIC did not err in terminating Connors's benefits. Connors has appealed from the District Court's decision. For the reasons set forth below, we affirm in part, and vacate and remand in part the decision of the District Court.

## BACKGROUND

On July 5, 1990, while making a sales call for his employer, Time Warner Cable, petitioner Connors was injured in a fall down a prospective customer's exterior stairs. Tests revealed that Connors suffered a herniated disk, nerve root compression, lumbosacral radiculopathy and a left knee injury in the fall.

As an employee of Time Warner Cable, which is apparently a subsidiary of American Television and Communications Corporation ("American"), *Conners v. Conn. Gen. Life Ins. Co.*, No. 98–8522, 1999 WL 1211831, at *1 n. 1 (S.D.N.Y. Dec.16, 1999) ("*Conners I*"); *Connors v. Conn. Gen. Life. Ins. Co.*, No. 98–8522, 2000 WL 1279790, at *1 (S.D.N.Y. Sept.11, 2000) ("*Connors II*"), Connors was covered under the Group Long Term Disability Insurance Policy (the "Policy") issued by CGLIC for American. The Policy, administered by CGLIC,[1] provides monthly income benefits for eligible employees who become disabled while employed by Time Warner. Under the Policy, an employee is eligible for disability benefits for up to twenty-four months if he is "unable to perform the essential duties of [his] occupation." (Group Insurance Plan, American Television and Communications Corporation, Life, Long and Short Term Disability, at 33.) To continue receiving disability benefits after twenty-four months, the employee must be "unable to perform the

essential duties of any occupation for which [he is] or may reasonably become qualified based on [his] education, training or experience." (*Id.*)

On September 24, 1993, Connors was retroactively awarded twenty-four months of disability benefits for the period of October 6, 1990 to October 5, 1992. Connors then received disability benefits under the second, more stringent definition of "total disability" for almost thirty additional months, *i.e.*, from October 6, 1992 to March 31, 1995. On March 31, 1995, CGLIC terminated benefits on the ground that Connors was no longer "totally disabled" within the meaning of the Policy. Connors challenged this determination and submitted additional evidence of his disability to CGLIC. On November 28, 1995, CGLIC informed Connors that it had considered his additional evidence but that it declined to reverse its finding that he was no longer "totally disabled."

The Policy grants CGLIC the right to make certain deductions from an employee's benefits for amounts the employee receives from other sources. Under the Policy, an employee's benefits can be "reduced by the amount of all Other Benefits which [the employee] receive[s]" each month. (*Id.* at 8.) Other Benefits include "any amounts which [the employee] receive[s] because of disability under . . . any workers' compensation or similar law." (*Id.* at 9.) Connors received workers' compensation benefits concurrently with his disability benefits under the Policy. CGLIC reduced Connors's disability benefits by amounts equal to his workers' compensation benefits. In May 1996, Connors repaid the workers' compensation benefits he had received after he won a settlement

---

1. Connors's case file was managed by CIGNA Group Insurance on behalf of CGLIC. Thus, while American is the "Plan Administrator,"

CGLIC, through CIGNA, determines whether a covered employee is eligible for benefits under the Policy.

award for the injuries he sustained in 1990. Connors contends that, as a result of this repayment, CGLIC owes him the amount it had previously deducted from his benefits.

## A. Connors's Medical History Before the Administrator

The administrative record includes the following information regarding Connors's medical history following his accident. Dr. Surendranath K. Reddy, an orthopedist, first saw Connors in August of 1990. On every occasion on which Dr. Reddy saw Connors during the fall of 1990, he regarded Connors's condition as totally disabled. Seeing no improvement by November, Dr. Reddy recommended that Connors have a magnetic resonance image ("MRI") taken of his spine. This MRI revealed the existence of a herniated disk at L5 S1, located in Connors's lower spine, with displacement and compression of the right S1 nerve root, also in his lower spine.

Connors was treated by two other physicians in late 1990 and early 1991, Dr. Leo E. Batash and Dr. Bing H. Tang. Dr. Batash diagnosed Connors with lumbosacral radiculopathy at L5 S1 with S1 root involvement. Dr. Batash also documented Connors's complaints of pain and his limited range of movement, noting that Connors could "hardly bend his body to pick or lift up something from the floor." (Report of Leo E. Batash, M.D., on Clifford Connors of 12/10/90.) Dr. Tang, a neurologist, noted that Connors suffered from, inter alia, cervical strain/sprain, cervical radiculopathy, sciatic neuritis, knee intrasubstance degeneration and a herniated L5 S1 disk.

In early 1991, Dr. Reddy made arrangements for Connors to be hospitalized and placed in pelvic traction. Connors was hospitalized at LaGuardia Hospital from May 20 to 31, 1991. While there, he was put on a course of bedrest, pelvic traction and physical therapy. In a letter dated June 1991, Dr. Reddy described Connors's prognosis as "[g]uarded" and noted that Connors's injury was permanent. (Letter from Dr. Surendranath K. Reddy, M.D., to Harry I. Katz of 6/17/91, at 2.)

In March of 1992, Connors began a course of treatment with Dr. Donald K. Musaffi, a chiropractor.[2] In a letter dated February 4, 1993, Dr. Musaffi described his treatment of Connors since 1992, and noted that Connors suffered from, inter alia, acute severe lumbar disc syndrome, muscle spasms, sciatic radiculoneuropathy and a herniated lumbar disc. Dr. Mussafi noted that "Mr. Connors is able to work on a volunteer basis only due to the severity of his condition. It is my professional opinion that Mr. Connors work a maximum of three hours only." (Letter from Dr. Donald K. Musaffi to Whom It May Concern of 2/4/93 (emphasis in original).) On June 1, 1993, Dr. Musaffi noted that Connors suffered from radiating neck pains and headaches. Dr. Musaffi wrote that "Mr. Connors has been unable to perform the essential duties of any occupation since he has been under my care. He is unable to perform any lifting or bending. He cannot stand or walk for extended periods. He is also unable to perform sitting work tasks." (Letter from Dr. Donald K. Musaffi to Whom It May Concern of 6/1/93.)

Dr. Reddy again evaluated Connors as totally disabled in a report sent on August 9, 1993, and Connors underwent back surgery on August 24, 1993. The surgery, however, was unsuccessful. While Connors experienced some initial improve-

---

2. Soon thereafter, in April of 1992, Connors had a second MRI of his lumbar spine that showed a herniated disk at L5 S1 extending toward the right side.

ment, the surgery failed to correct the herniated disk and Connors's pain returned. A March 1994 exam suggested that Connors suffered from L5–S1 radiculopathy or central nervous system pathology. A third MRI in April 1994, confirmed that Connors continued to suffer from a herniated disk at L5–S1.

In a letter dated February 15, 1994, Dr. Lawrence W. Shields, a neurologist who began treating Connors in June of 1993, documented Connors's limited range of motion and noted his complaints of constant back pain that radiated to his legs and neck pain that radiated to his right upper arm. Dr. Shields diagnosed Connors with, *inter alia,* a herniated disk at L5 S1 with displacement of the right S1 root, lumbrosacral radiculopathy, post traumatic stress disorder and cervical and lumbar myofascitis. Dr. Shields noted that Connors was taking a number of pain medications and described his prognosis as "guarded."

Dr. Reddy continued to treat Connors through 1995. In a January 1995 report, Dr. Reddy documented Connors's complaints of pain in the lumbar area; noted that he was undergoing chiropractic treatment and physical therapy and that Connors had been prescribed painkillers; and evaluated Connors as "totally disabled at present for any occupation." (Letter from Surendranath K. Reddy, M.D., to Gentlemen of 1/10/95.)

## B. *CGLIC's Denial of Benefits/Supplemental Administrative Record*

CGLIC terminated Connors's benefits on March 31, 1995. In reaching this decision, CGLIC relied on information from a physician hired by CGLIC who examined Connors on one occasion, a CGLIC employee who performed an analysis of Connor's transferrable skills, and an in-house CGLIC medical consultant who reviewed Connors's medical file.

In May of 1994, CGLIC retained Dr. Alan A. Mazurek, a neurologist, to evaluate Connors's physical condition. Following his examination of Connors, Dr. Mazurek confirmed that Connors was suffering from lumbosacral radiculopathy, that Connors had experienced "only temporary improvement" after the 1993 surgery, and that Connors suffered from "recurrent pain." Dr. Mazurek also noted that Connors could benefit from continued physical therapy and traction, and recommended evaluation by a neurosurgeon.

In completing CGLIC's standard evaluation form, Dr. Mazurek indicated that Connors was able to sit, stand and walk for four hours each per day for one hour at a time. Dr. Mazurek also determined that Connors could not bend, stoop, squat, crawl, climb, reach above shoulder level, kneel or balance. Despite these limitations, Dr. Mazurek evaluated Connors as able to perform sedentary work on a full time basis. On October 31, 1994, after reviewing Dr. Mazurek's report, a CGLIC officer recommended that CGLIC continue Connors's benefits.

In November 1994, CGLIC retained Roxanne Milton, a vocational rehabilitation specialist, for an evaluation of Connors's ability to be trained for other employment. After conducting a Transferable Skills Analysis ("TSA"), Ms. Milton noted that Connors's skills "do not transfer directly to other occupations at the sedentary level" but that they did transfer indirectly to twenty-nine semi-skilled or unskilled jobs. (Report of Roxanne Milton on Cliff Connors of 11/23/94.) Upon reviewing the results of the TSA, a CGLIC insurance benefit analyst noted that Connors should be offered retraining but also recommended continuation of his benefits.

CGLIC then asked Dr. George Weilepp, an in-house medical consultant for CGLIC, to review Connors's file. On March 27, 1995, Dr. Weilepp concluded that Connors could return to light work. Dr. Weilepp found that Connors could perform a job that required frequent lifting of ten pounds and occasional lifting of twenty pounds, as long as he avoided repetitive lifting above the shoulder or below the knee or waist. Dr. Weilepp noted, in addition, that "the issue of sedentary work might be a consideration on [the] basis of pain but [he did] not have the medical information" that would be necessary to evaluate Connors's post-operative condition fully. (Report of George Weilepp, M.D., on Cliff Conners of 3/27/95.) Nonetheless, Dr. Weilepp concluded that it was conceivable that Connors could return to work as a door-to-door salesman.

Subsequently, on April 20, 1995, CGLIC sent Connors a letter notifying him that it had terminated his benefits as of March 31, 1995. The letter explained that CGLIC based its decision on Dr. Mazurek's report and findings by a medical consultant.

Connors challenged CGLIC's determination that he was not totally disabled and submitted additional evidence from his treating orthopedist, Dr. Reddy. Dr. Reddy wrote in a report dated July 25, 1995 that Connors "continues to have pain . . . in the back radiating down his right lower extremity. His recent MRI was positive for herniated disc. . . . He is totally disabled at this time." (Report of Surendranath K. Reddy, M.D., on Cliff Connors of 7/25/95.) Connors submitted additional evidence from his neurologist, Dr. Shields, as well. On September 1, 1995, Dr. Shields diagnosed Connors as suffering from chronic pain syndrome and recommended Connors's admission to a pain management program.

Connors also submitted to CGLIC a vocational evaluation that had been performed at the request of his attorney. According to the report, Connors was able to sit for sixty minutes, stand for thirty to sixty minutes, lift and carry ten pounds, and "could alternately perform these movements for four to five hours out of an eight-hour workday." (Occupational Assessment Services, Inc., Vocational Evaluation for Cliff Connors, Mar. 1, 1995, at 10.) The report concluded that Connors was "unable to perform *any* Sedentary, Light, Medium, Heavy, or Very Heavy Work existing in the local or national economy on a sustained, full-time, regular, competitive basis." (*Id.* at 12 (emphasis in original).)

CGLIC retained Dr. Jonathan Z. Charney, who reviewed Connors's medical file and, in a report dated October 28, 1995, expressed his opinion that although Connors was experiencing pain, he was also "able to sit and able to lift and carry small objects" and was "capable of performing sedentary work." (Report of Jonathan Z. Charney, M.D., of 10/28/93, at 4.) Dr. Charney did not examine Connors in person.

CGLIC also solicited information from Connors's urologist, Dr. Brett C. Mellinger. In his report, Dr. Mellinger noted that his evaluation was limited to Connors's urologic dysfunctions that had developed as secondary conditions to his back injury. According to Dr. Mellinger, "[t]his patient is disabled at the present time[;] however, since I am not addressing his overall health care, I cannot render a medical opinion regarding his ability to return to any occupation." (Letter from Brett C. Mellinger, M.D., to CIGNA Group Insurance of 6/19/95, at 2.) CGLIC advised Connors on November 28, 1995, that it had received the additional evidence but that it

declined to reverse its decision to terminate his benefits.

### C. *Proceedings Before the District Court*

On December 2, 1998, Connors filed suit in the Southern District of New York challenging CGLIC's termination of his disability benefits as a breach of the terms of his insurance contract. CGLIC answered and moved to strike Connors's demand for a jury trial on the ground that his state law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), which does not provide a right to trial by jury. *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir.1998). At the same time, Connors urged the court to consider evidence beyond the administrative record, if Connors's jury demand were denied.

On December 16, 1999, the court granted the motion to strike Connors's jury demand and declined to allow the submission of evidence beyond the administrative record. *Conners I*, 1999 WL 1211831. According to the court, CGLIC was not a conflicted administrator, making additional evidence unnecessary. *Id.* at *3. The court made this ruling, however, "without prejudice to [Connors's] right to argue that the record [was] so deficient that additional evidence should be received." *Id.*

On *de novo* review of the administrative record before CGLIC, the District Court held that "CGLIC did not err when it determined that Connors was not 'totally disabled' as defined by the Policy." *Connors II*, 2000 WL 1279790, at *1. First, the court reasoned, Connors's disability was "merely his back pain, which is a subjective matter." *Id.* Second, the court observed that Dr. Mazurek found Connors able to perform sedentary work, noting that Dr. Mazurek's conclusion was "[p]resumably ... based upon the doctor's observations of, and conversations with, Con-

nors." *Id.* Third, the court found that the evidence submitted by Connors was inadequate, explaining that the reports of Connors's physicians either lacked detailed analysis or failed to state that Connors was totally disabled. *Id.* In evaluating these reports, the court emphasized that Dr. Reddy's opinion should be given "less weight" because Connors had been referred to Dr. Reddy by his attorney. *Id.* Moreover, the court added that even if the additional evidence submitted by Connors were admitted, it "does not establish that he is totally disabled." *Id.* at *2.

Finally, the court also rejected Connors's claim that he should be returned the amounts that had been deducted from his disability benefits during the time in which he received workers' compensation benefits. *Id.* at *3. The court found that Connors's repayment of his workers' compensation benefits after CGLIC deducted amounts equal to these benefits did not "unjustly enrich[ ] CGLIC at the expense of Connors." *Id.*

On appeal, Connors also presents for review the issue of whether he is entitled to attorneys' fees and prejudgment interest. This issue was not explicitly addressed by the District Court.

### DISCUSSION

 Unless an ERISA plan grants an administrator discretion in determining whether a participant is entitled to benefits, a district court reviews an ERISA administrator's eligibility determination *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249–51 (2d Cir.1999). The parties in this case do not dispute that the District Court properly reviewed *de novo* the decision on Connors's benefits. In reviewing an ERISA eligibility determination *de*

*novo*, the district court is limited to a review of the evidence in the administrative record absent good cause to consider additional evidence. *DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 66–67 (2d Cir.1997).

 After a bench trial, where the district court must "find the facts specially and state separately its conclusions of law thereon," as well as "judge the credibility of witnesses," Fed.R.Civ.P. 52(a), we review the district court's findings of fact for clear error and conclusions of law and mixed questions *de novo*. *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir.1997). Under Rule 52(a), "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a). Thus, findings of fact in a bench trial based on written submissions are accorded the same deference as factual findings that are otherwise determined. A finding of fact " 'is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir.2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

Since the District Court's determination that Connors was not totally disabled was premised on two clearly erroneous findings of fact and one error of law, we vacate that portion of the decision denying Connors benefits and remand for further proceedings. The District Court's conclusion that CGLIC could deduct benefits to the extent of Connors's workers' compensation benefits was correct and we affirm that portion of its decision.

### A. *Connors's Disability*

 The first error underlying the determination that Connors was not totally disabled was the finding that Dr. Reddy was a physician hired by Connors's attorney. This error infected the District Court's credibility determination. The District Court held that "the fact that Connors was referred to Dr. Reddy by his attorney gives this evidence [from Dr. Reddy] less weight than the evidence that Connors is capable of performing sedentary work." *Connors II*, 2000 WL 1279790, at *1.[3] Dr. Reddy was Connors's treating physician. He was one of the first physicians to examine Connors after the accident, and he treated Connors for almost five years. Had the District Court recognized that Dr. Reddy was Connors's regular physician, it would no doubt have accorded his opinion greater weight, although it remained free to evaluate that opinion in the context of any factors it considered relevant, such as the length and nature of their relationship, the level of the doctor's expertise, and the compatibility of the opinion with the other evidence.[4] At the very least, as Connors's

---

**3.** The District Court's error may have been triggered by a statement Dr. Reddy made in a January 10, 1995 letter-report thanking unspecified addressees (identified only as "Gentlemen") for the "referral." Although it is unclear whom Dr. Reddy intended to thank, CGLIC's records indicate that it had requested a narrative report from Dr. Reddy near the time of the January report. Thus, Dr. Reddy may in fact have been thanking CGLIC for the referral.

**4.** We do not adopt for these purposes—that is, when a district court reviews an ERISA administrator's decision under a *de novo* standard—the "treating physician rule," a standard developed in the Social Security context requiring "that the fact-finder give greater deference to the expert judgment of a physician who has observed the patient's medical condition over a prolonged period of time." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir.1999). As a rule designed to encour-

treating physician, Dr. Reddy was more familiar with Connors's condition and medical history than Dr. Mazurek, who saw Connors only once, and Drs. Charney and Weilepp, who never examined Connors.[5] In any event, it seems anomalous to give less weight to someone in Dr. Reddy's position than to the views of professionals hired by plaintiff's adversary, an insurance company.

▇ In a second error, the District Court found that CGLIC denied Connors's claim "[w]hen Connors applied for benefits under the Policy claiming total disability." *Connors II,* 2000 WL 1279790, at *1.[6] Contrary to this finding, neither party disputes that CGLIC had provided total disability benefits to Connors for almost fifty-four months before it determined that Connors was not "totally disabled" within the meaning of the Policy, including almost thirty months under the second, more stringent definition of disability, which required that the beneficiary be "unable to perform the essential duties of *any* occupation." (Group Insurance Plan, American Television and Communications Corporation, Life, Long and Short Term Disability, at 33 (emphasis added).) Had the District Court recognized that CGLIC's finding of ineligibility was not in response to an application for benefits, but rather a reversal

in policy preceded by no significant change in Connors's physical condition,[7] it may have accorded less weight to the evidence presented by CGLIC.

▇ Finally, the District Court erred in discounting Connors's complaints of pain as merely "subjective." *Connors II,* 2000 WL 1279790, at *1. It has long been the law of this Circuit that "the subjective element of pain is an important factor to be considered in determining disability." *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984). While a district court reviewing an administrator's decision *de novo* is not required to accept such complaints as credible, *see Aponte v. Sec'y of the Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir.1984) (stating that it is the function of the factfinder to appraise the credibility of witnesses's complaints of pain), it cannot dismiss complaints of pain as legally insufficient evidence of disability, *see Rivera v. Schweiker,* 717 F.2d 719, 724 (2d Cir.1983) (citing plaintiff's frequent complaints to his wife and neighbor of headaches and neck pains and his testimony about same as "overwhelming, substantial evidence" of the extent of plaintiff's pain); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) ("[T]he subjective evidence of appellant's pain, based on her own testimony and

---

age the development of the administrative record so that the district court can determine whether the administrator's decision was supported by substantial evidence, the "treating physician rule" serves no particular purpose in the context of *de novo* review.

5. We also note that Dr. Mazurek's opinion regarding Connors's ability to perform sedentary work is at odds with the generally recognized definition of such work. He found that Connors could not stand, sit or walk for more than four hours a day per activity and could do each activity for only one hour at a time. The ability to sit for a total of four hours does not generally satisfy the standard for sedentary work. According to the Social Security

Administration, "sedentary work 'generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day.' " *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir.2000) (quoting Soc. Sec. Rul. 83–10) (emphasis in original).

6. This error also exists in *Connors I,* the opinion of December 16, 1999. *See* 1999 WL 1211831, at *1.

7. CGLIC's argument that Connors received benefits under the more stringent definition only while he recovered from back surgery is not supported by evidence documenting any improvement in Connors's condition in the year and a half after his surgery.

medical reports of examining physicians, is more than ample to establish her disability, if believed."). A district court's finding that a complaint of pain is not credible is a finding of fact subject to review for clear error. A determination that such a complaint is legally insufficient, however, is a conclusion of law subject to review *de novo*. *See LoPresti,* 126 F.3d at 39 (stating that a district court's conclusions of law are reviewed *de novo* ). We vacate the judgment and remand for reconsideration to the extent that the District Court failed to consider Connors's complaints of pain because it found that such complaints could not be considered evidence of disability.

## B. *Reduction in Benefits*

 Connors seeks the return of funds that were withheld by CGLIC from his disability benefits as offsets for the workers' compensation benefits he received. The Policy provides that monthly disability benefits will be reduced by the amount received under workers' compensation and similar laws.

 We are not convinced by Connors's argument that he is entitled, under the terms of the Policy, to a return of the funds withheld because he ultimately repaid the amount he received in workers' compensation benefits after settling his personal injury claim. On *de novo* review, unambiguous language in an ERISA plan must be interpreted and enforced "according to its 'plain meaning.'" *Aramony v. United Way of Am.,* 254 F.3d 403, 412 (2d Cir.2001) (quoting *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 149 (2d Cir.1999)). When the language of an ERISA plan is unambiguous, we will not read additional terms into the contract. *Aramony,* 191 F.3d at 150. The terms at issue here are not ambiguous. The Policy allows CGLIC to reduce monthly benefits by amounts received from other sources. The fact that Connors ultimately repaid his workers' compensation benefits does not change CGLIC's rights under the Policy. Any other result would presume that additional benefits are due to Connors that were not stated in the insurance policy by the parties to the insurance contract. The District Court was correct in denying Connors's claim for return of the amounts withheld by CGLIC.

## C. *Attorneys' Fees and Pre Judgment Interest*

 Connors contends on appeal that this Court should award him attorneys' fees and prejudgment interest. A district court reviewing a claim under ERISA may, in its discretion, " 'allow a reasonable attorney's fee and costs of action to either party.'" *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 138 (2d Cir.2000) (quoting 29 U.S.C. § 1132(g)(1)). Similarly, the issue of "whether or not to award prejudgment interest [in ERISA cases] is ordinarily left to the discretion of the district court." *Id.* at 139. The court must, however, articulate reasons for its decision to grant or deny fees. When the district court does not do so, we will remand for appropriate and informative findings. *Id.* at 138. The court should also briefly explain its reason for any decision regarding prejudgment interest. *Id.* at 140. Where the District Court has not considered in the first instance whether Connors is entitled to fees or prejudgment interest, we decline to address this matter and remand to the District Court for further findings consistent with this Opinion.

## CONCLUSION

For the foregoing reasons, the decision of the District Court finding no error in defendant's termination of Connors's bene-

fits is vacated and remanded. We affirm the District Court's denial of Connors's claim for return of amounts withheld from his benefits. Connors's application for fees and prejudgment interest is remanded to the District Court.