**METROPOLITAN LIFE INSURANCE COMPANY** and **General Electric Company, Plaintiffs–Counter–Defendants–Appellees,**

v.

**Tracy BIGELOW and Sherri Bigelow Gallup, Defendants–Counter–Claimants–Cross–Claimants–Appellees,**

**Michael J. Bigelow, Defendant–Cross–Defendant–Counter–Claimant–Appellant.**

**Docket No. 01–7474.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 2001.

Decided March 7, 2002.

Chaim Jaffe, Scolaro, Shulman, Cohen, Lawler & Burstein, P.C., Syracuse, NY, for Defendant–Cross–Defendant–Counter–Claimant–Appellant Michael J. Bigelow.

Robert J. Krzys, Amsterdam, NY, for Defendants–Counter–Claimants–Cross–Claimants–Appellees, Tracy Bigelow and Sherri Bigelow Gallup.

Before: POOLER, SOTOMAYOR, and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Plaintiffs Metropolitan Life Insurance Company ("MetLife") and General Electric Company ("GE") brought an interpleader action against defendants Michael J. Bigelow, Tracy Bigelow, and Sherri Bigelow Gallup to determine the proper beneficiary of two employee benefits plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The District Court (Frederick J. Scullin, Jr., *Chief Judge*) concluded that Tracy Bigelow and Sherri Bigelow Gallup were the proper beneficiaries of the plans and granted their motion for summary judgment. Michael J. Bigelow appealed. We affirm and remand for a determination of interest.

## BACKGROUND

Michael J. Bigelow (the "Decedent"), the son of defendant Michael J. Bigelow, was employed at GE until his death on March 11, 1999. The Decedent participated in three ERISA-regulated employee benefits plans: a life insurance plan administered by MetLife, a pension plan administered by GE, and a Savings and Security Plan administered by GE. This dispute involves competing claims to the benefits of the life insurance and pension plans (collectively, the "Plans").[1] The competing claimants are Michael J. Bigelow, the Decedent's father (the "Father"), on one side, and Tracy Bigelow and Sherri Bigelow Gallup,

---

1. The benefits of the Savings and Security Plan are not in dispute.

the Decedent's daughters (the "Daughters"), on the other.

The Decedent and his then-wife, Karen L. Bigelow, obtained a divorce decree in Supreme Court, Montgomery County, New York on December 17, 1982, and the decree was entered in the Montgomery County Clerk's Office on January 4, 1983. They subsequently reached a settlement agreement distributing their marital property (the "Stipulation"), which was read into the record of the Supreme Court proceeding on January 12, 1983. The Stipulation referred to "a General Electric insurance plan which consists of group life insurance, disability death and insurance for the dependant children," and it provided that "the children of this marriage shall be designated irrevocable beneficiaries and the proceeds of such policies if ever paid will be paid in equal share or to the survivor of them." In the Stipulation, the Decedent also agreed to designate "the children or the surviving child an irrevocable beneficiary" of "any retirement benefits … attached to this G.E. program." It is not disputed that the Daughters are the only children of the Decedent's marriage to Karen L. Bigelow. The Stipulation was incorporated into a state court order and judgment on February 1, 1983 (the "Judgment"). Despite his previous agreement to designate the Daughters irrevocable beneficiaries, in 1991 the Decedent designated the Father as the primary beneficiary on the Plans' documents.

The Decedent died on March 11, 1999, and two days later the Daughters submitted to GE a claim to the life insurance, pension, and Savings and Security benefits. On March 18, 1999, the Father submitted a claim to the life insurance and pension benefits. After receiving the competing claims, neither MetLife nor GE followed the procedures outlined in 29 U.S.C. § 1056(d)(3)(G) and (H).[2] Instead, MetLife and GE informed the Daughters and the Father that they were unable to make a decision, fearing exposure to double liability if they reached a conclusion that ultimately proved incorrect. MetLife and GE, as stakeholders, then initiated an interpleader action, naming the Daughters and the Father as defendants. In their complaint, GE and MetLife alleged that they were unable to determine to whom the benefits should be paid and that they were "ready, willing and able" to pay them to whichever party the court determined to be the appropriate beneficiary.

After discovery, the Father and the Daughters cross-moved for summary judgment. The District Court concluded that the Daughters were the proper beneficiaries of the Plans and, accordingly, denied the Father's motion and granted the Daughters' cross-motion. Following entry of judgment, the Father appealed.

## DISCUSSION

■ Initially we note that MetLife and GE, as fiduciaries of the Plans, had stand-

---

2. Section 1056(d)(3)(G)(i)(II) provides, in pertinent part:

[W]ithin a reasonable period after receipt of [any domestic relations order], the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.

Section 1056(d)(3)(H)(iii) provides, in pertinent part:

If within the 18–month period [beginning with the date on which the first payment would be required to be made under the domestic relations order]—

(I) it is determined that the order is not a qualified domestic relations order, or

(II) the issue as to whether such order is a qualified domestic relations order is not resolved,

then the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons who would have been entitled to such amounts if there had been no order.

ing to bring an interpleader action pursuant to Fed.R.Civ.P. 22 and 29 U.S.C. § 1132(a)(3)(B), and that federal subject matter jurisdiction exists under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. *See Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030, 1033–34 (9th Cir.2000); *Metro. Life Ins. Co. v. Marsh,* 119 F.3d 415, 418 (6th Cir.1997).

We turn now to the merits of the appeal, where the standard of review is well-established. "On appeal from a grant of summary judgment we review the record *de novo* to determine whether genuine issues of material fact exist requiring a trial." *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir.2001) (citation omitted). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

No material facts are in dispute. Rather, the controversy involves solely statutory interpretation—namely, whether ERISA or state law governs the determination of the proper beneficiaries. If ERISA governs, then the Father, who is the named beneficiary in the Plans' documents, is the proper beneficiary. *See* 29 U.S.C. § 1144(a) (2000). If ERISA does not apply, or if the state-law Judgment is exempt from ERISA's preemption provision, then the Daughters, who were designated "irrevocable beneficiaries" in the

Stipulation, are the proper beneficiaries. *See id.* § 1144(b)(7).

Generally, ERISA preempts state laws that "relate to" employee benefits plans. 29 U.S.C. § 1144(a). The Supreme Court has held that "a state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff,* 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (citation and internal quotation marks omitted). To determine whether a state law has a "connection with" an ERISA plan, we look to "the objectives" of ERISA and "to the nature of the effect of the state law on ERISA plans." *Id.* (citation and internal quotation marks omitted). State laws governing the designation of plan beneficiaries, such as the law giving effect to the Judgment, "relate to" employee benefits plans and thus are subject to ERISA preemption. *Id.* at 1327–28; *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 14–16 (2d Cir.1993). ERISA, however, creates several exceptions to its general preemption provision, one of which is relevant here: ERISA does not preempt "qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title). . . ." 29 U.S.C. § 1144(b)(7). This, then, is the nub of the present dispute: if the Judgment is a qualified domestic relations order ("QDRO"), ERISA does not preempt it, and the Daughters are the proper beneficiaries; if, however, the Judgment is not a QDRO, then ERISA preempts, and the Father is the proper beneficiary.[3]

---

**3.** The life insurance plan is a "welfare plan" within the meaning of 29 U.S.C. § 1002(1), and, at the risk of redundancy, the pension plan is a "pension plan" within the meaning of 29 U.S.C. § 1002(2)(A). We must determine, then, whether § 1144(b)(7) creates an exception to ERISA preemption for all QDROs—whether they involve either pension or welfare plans—or only for those QDROs that involve pension plans. The answer to

this question is clear from the face of the statute. Unlike ERISA's anti-alienation provision, 29 U.S.C. § 1056(d), which applies only to pension plans, neither the general preemption provision, § 1144(a), nor the provision that creates the QDRO exception to preemption, § 1144(b)(7), is similarly limited. We therefore join the other circuits to have considered this issue in concluding that the § 1144(b)(7) exception to ERISA preemption

The concept of the QDRO originated with the Retirement Equity Act (the "REA"), an amendment to ERISA which took effect, for relevant purposes, on January 1, 1985. Pub. L. No. 98–397 § 303(d), 98 Stat. 1426 (1984). Timing is significant because prior to the REA and its QDRO provisions, ERISA preempted state court orders such as the Judgment. Since employment benefits were commonly at issue in state court matrimonial disputes and since ERISA's preemption provision had the unintended effect of disturbing interests and expectations fixed in such proceedings, the REA was designed to give effect to divorce decrees and related state-court orders insofar as they pertained to ERISA-regulated plans. *Boggs v. Boggs*, 520 U.S. 833, 847, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (stating that "one of REA's central purposes ... is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death[,] the surviving spouse").

The REA defines a QDRO as a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan...." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (2000). In order to qualify as a QDRO, a domestic relations order must also meet several other requirements. These include:

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(C)-(D).

Given these requirements, we must determine whether the Judgment is a QDRO and therefore exempt from ERISA preemption. The Father makes three arguments. First, he argues that ERISA required MetLife and GE, rather than the District Court, to make the initial determination as to whether the Judgment is a QDRO. Second, he argues that the Judgment is not valid under New York law, and thus is not a domestic relations order with-

applies to all QDROs, whether they involve either pension or welfare plans. *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 863 n.5 (4th Cir.1998); *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1083–84 (7th Cir.1994); *Marsh*, 119 F.3d at 421; *Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1119–20 (10th Cir.), *cert. denied*, 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991). If the Judgment is a QDRO, it is exempt from ERISA preemption with respect to both the life insurance and pension plans.

in the meaning of 29 U.S.C. § 1056(d)(3)(B)(ii)(II). Third, he argues that the Judgment does not meet the requirements of § 1056(d)(3)(C) because it does not specify the names and addresses of the participant and the alternate payees and because it does not clearly specify each plan to which it applies. We address each of these arguments in turn.

■ In arguing that MetLife and GE were required to make the initial QDRO determination, the Father relies on 29 U.S.C. § 1056(d)(3)(G)(i)(II), which provides that, "within a reasonable period after" receiving a domestic relations order, "the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination." The Father seizes on the word "shall," contending that the plan administrator must determine whether the order is a QDRO before a court may do so.

We do not read the statute so restrictively. The interpleader complaint seeks a determination of the proper beneficiary of the Plans. As noted above, and as the Father concedes, we have subject matter jurisdiction over this dispute. Nothing in ERISA limits this jurisdiction, and no claims have been made regarding the administrators' conduct. Here, the Daughters were the ones who first requested that the administrators determine the proper beneficiaries. Once the administrators concluded that they were unable to decide, permitting a court to do so seems preferable to dismissing the action and returning it to the same administrators. Requiring the procedural sequence insisted on by the Father would exalt form over

substance and would assist none of the interested parties. Significantly, at least two other circuits have resolved conflicting claims to benefits where plan administrators proceeded exactly as MetLife and GE did-by commencing an interpleader action instead of making the initial QDRO determination. *Marsh*, 119 F.3d 415; *Wheaton*, 42 F.3d 1080.

■ Next, the Father argues that the Judgment is not a valid domestic relations order within the meaning of 29 U.S.C. § 1056(d)(3)(B)(ii)(II), which requires such an order to have been "made pursuant to a State domestic relations law," because it does not satisfy the requirements of section 236(B)(3) of the New York Domestic Relations Law. The latter statute provides: "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." N.Y. Dom. Rel. Law § 236(B)(3) (McKinney 2001). The Father argues that the Judgment is invalid because it failed to satisfy any of these requirements. The Daughters do not dispute these facts, but insist that the statute is satisfied by a stipulation on the record in open court, an issue we do not reach. Primarily, however, the Daughters argue that section 236(B)(3) is irrelevant because the Judgment was not entered before or during the marriage.[4] The Daughters are correct. The Stipulation was made on January 12, 1983, and it was incorporated into the Judgment on February 1, 1983. The Bigelows' divorce decree was dated December 17, 1982, and it was entered in

---

4. The Father contends that we may not consider this argument because the Daughters failed to raise it before the District Court. Because the Father conceded at oral argument that no additional facts are needed to resolve the issue of when the Bigelows were divorced, however, we may consider it. *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir.1994) (citing *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir.1982)).

the Montgomery County Clerk's Office on January 4, 1983. Consequently, the Bigelows were already divorced when the Judgment was entered and section 236(B)(3) does not apply.[5] As the Father raises no other challenges to the validity of the Judgment, we find that it was made pursuant to New York domestic relations law and that it is therefore a domestic relations order under the REA. 29 U.S.C. § 1056(d)(3)(B)(ii).

 Finally, the Father argues that the Judgment is not a QDRO because it does not specify the names and addresses of the participant (the Decedent) and the alternate payees (the Daughters) and because it does not specify each plan to which it applies. These contentions are easily disposed of. In enacting the REA, Congress made clear that a domestic relations order—like the Judgment—entered before January 1, 1985 may be treated as a QDRO "even if such order does not meet the [REA] requirements . . . ." Pub.L. No. 98–397 § 303(d). Although this precise question has not been previously resolved in this Circuit, we join the Sixth Circuit in holding that ERISA does not require "literal compliance" with respect to domestic relations orders entered prior to January 1, 1985. *Marsh*, 119 F.3d at 422. The Sixth Circuit concluded:

> We believe the divorce decree here was specific enough to substantially comply with ERISA's requirements. No essential information is lacking. As the divorce decree was written before the REA amended ERISA in 1984, we should not demand literal compliance where Congress' intent has been to give effect to domestic relations orders where it is clear what the decree intended.

*Id.* Moreover, courts applying the QDRO requirements to post-REA domestic rela-

tions orders generally have not demanded literal compliance with those requirements either. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1151–53 (9th Cir.2000), *cert. denied*, 531 U.S. 1074, 121 S.Ct. 768, 148 L.Ed.2d 668 (2001); *Wheaton*, 42 F.3d at 1085. *But see Hawkins v. Comm'r of Internal Revenue*, 86 F.3d 982, 992 (10th Cir.1996) (stating that "we do not agree that the QDRO specificity requirements should be construed . . . liberally").

While the Judgment does not contain the Decedent's address, it does contain his name, as well as his attorney's name and address, which is sufficient. *Stewart*, 207 F.3d at 1151–52 (holding that attorney's address is sufficient); *Carland*, 935 F.2d at 1120 (same). With respect to the Daughters, the Judgment identifies them as "the children of this marriage" and as "Sherry . . . and Theresa." The Father contends that this misidentification—their names are Sherri and Tracy—prevents the Judgment from qualifying as a QDRO. The Father acknowledges, however, that the Decedent did not have a child named Theresa, and he does not argue that the Decedent had any children other than the Daughters. The reference to "Theresa" is clearly a transcription error, which should not deprive the Judgment of QDRO status. As there is no genuine dispute as to the identification of the alternate payees, we find that the Daughters are identified with sufficient specificity.

Nor is the Stipulation's failure to identify the Daughters' address fatal. The Stipulation indicates that the Decedent's ex-wife was granted sole custody of the Daughters, and the ex-wife's name and her attorney's name and address were included in the Stipulation. *See Marsh*, 119

---

**5.** Under the then-prevailing law, the divorce was effective when the decree was entered, even though issues of property distribution

had not yet been resolved. *See Busa v. Busa*, 196 A.D.2d 267, 609 N.Y.S.2d 452, 453–54 (N.Y.App.Div.1994).

F.3d at 422 (holding that with respect to children, custodial parent's address is sufficient); *Wheaton*, 42 F.3d at 1084 (same). In any event, the Plans' administrators clearly knew the address of the Decedent, a longtime GE employee and participant in the Plans, and of the Daughters' attorney, who sent several letters on their behalf. Congress intended this to be sufficient:

> The Committee intends that an order will not be treated as failing to be a qualified order merely because the order does not specify the current mailing address of the participant and alternate payee if the plan administrator has reason to know that address independently of the order.

S.Rep. No. 98-575 at 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2566.

The Father's contention that the Stipulation does not clearly specify each plan to which it applies also lacks merit. The Stipulation identifies "a General Electric insurance plan which consists of group life insurance, disability death and insurance for the dependant children," as well as "any retirement benefits." Although the Stipulation identifies neither the life insurance plan nor the pension plan by name, ERISA contains no such requirement. Rather, the statute requires only that a domestic relations order "clearly specif[y] . . . each plan to which such order applies." 29 U.S.C. § 1056(d)(3)(C)(iv). The Stipulation's reference to "a General Electric insurance plan which consists of group life insurance" sufficiently identifies the life insurance plan, and its reference to "any retirement benefits" sufficiently identifies the pension plan. *See Wheaton*, 42 F.3d at 1084 (finding reference to "the life insurance which is presently carried through his/her employer" sufficiently specific).

 Because the Judgment substantially complies with the requirements of 29 U.S.C. § 1056(d)(3)(B)(i), we find it to be a QDRO. Although Pub.L. No. 98-397

§ 303(d)—by virtue of its use of the word "may" rather than "shall"—grants plan administrators some discretion to refuse to treat pre-1985 domestic relations orders as QDROs, it would abuse an administrator's discretion to refuse to treat an order that, like the Judgment, substantially complies with ERISA requirements as a QDRO. Because the Judgment is a QDRO, it is exempt from ERISA preemption, and the Daughters are the proper beneficiaries of the Plans. *See* 29 U.S.C. § 1144(b)(7).

Finally, the Daughters also seek prejudgment and post-judgment interest. *See Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir.2002). Because the District Court has not made any findings regarding the Daughters' entitlement to interest, we decline to reach this issue and instead remand to the District Court to make this determination. *See Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 137 (2d Cir.2001) (citing *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir.2000)).

## CONCLUSION

For these reasons, we affirm the judgment of the District Court and remand for a determination of the Daughters' entitlement to interest.

POOLER, Circuit Judge, concurring.

I concur in the judgment and in all of the majority opinion except that portion that analyzes whether the divorce judgment is a domestic relations order within the meaning of ERISA. The daughters contended in district court that the decedent's father could not collaterally attack any term of the judgment including its incorporation of the stipulation. Affidavit of Karen L. Bigelow of Aug. 29, 2000, §§ 9,14. Although less clearly, the daughters make the same argument on appeal. See Appellees' Br. at 15 (arguing that the

Father "attempts to collaterally attack the Judgment and underlying matrimonial proceedings"). I agree and would hold that the judgment precludes us from addressing whether (1) the Stipulation had to be executed in accordance with Domestic Relations Law § 236(B)(3) and (2) if so, it was validly executed.

All that ERISA requires to classify a judgment, decree, or order as a "domestic relations order" is that it be "made pursuant to a State domestic relations law" and address "the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(B)(ii). The New York Supreme Court issued its judgment dividing the parties' marital property pursuant to the state's Domestic Relations law, and neither party to the divorce challenged that judgment directly or collaterally during the decedent's lifetime. Because the judgment, among other things, divided marital property, it is a domestic relations order. Because the judgment was issued by a New York state court having jurisdiction of the parties and the subject matter, we must give it the same effect that the New York courts would accord it. *Hickerson v. City of New York,* 146 F.3d 99, 103 (2d Cir.1998). New York courts would not allow a party to the divorce action to challenge the validity of the judgment or the validity of the stipulation it incorporates absent unusual circumstances not present here. *See, e.g., Rainbow v. Swisher,* 72 N.Y.2d 106, 110, 531 N.Y.S.2d 775, 527 N.E.2d 258 (1988) (holding that even though matrimonial court apparently misconstrued terms of settlement agreement by failing to merge it in decree of divorce, defendant could not launch a collateral attack on the non-merger term of the decree after he failed to seek modification of the decree or to appeal from it); *Bouille v. Bouille,* 192 A.D.2d 802, 803, 596 N.Y.S.2d 524 (3d Dep't 1993) (rejecting party's argu-

ment that prior agreement between parties was simply a part of a prior Family Court order and not a separation agreement because the argument was a "collateral attack upon the judgment of divorce which established that the stipulation was the parties' separation agreement necessary for their conversion divorce"); *In re Schell,* 191 A.D.2d 570, 571–72, 594 N.Y.S.2d 807 (2d Dep't 1993) (holding that ex-wife could not challenge—in a Surrogate's Court proceeding—her divorce decree incorporating a separation agreement despite her claim that the agreement was procured by fraudulent inducement because the attack was collateral and she "received benefits under the agreement for almost eight years"). Nor would New York courts allow the decedent's father to collaterally attack the judgment incorporating the stipulation. "It is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them." *Green v. Santa Fe Indus.,* 70 N.Y.2d 244, 253, 519 N.Y.S.2d 793, 514 N.E.2d 105 (1987). In addition to other definitions, privity "denote[s] a mutually successive relationship of the same rights to the same property." *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 486, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979). In *Gramatan,* the New York Court of Appeals found that the assignee of a retail installment contract was not bound by a finding of fraud against its assignor in an earlier lawsuit because the assignee took the assignment before the first lawsuit was instituted. *Id.* at 487, 414 N.Y.S.2d 308, 386 N.E.2d 1328. The court noted, however, that if the assignment had taken place after institution of the first lawsuit, the assignee would be bound by the results of the first lawsuit. *Id.* at 486–87, 414 N.Y.S.2d 308, 386 N.E.2d 1328. Decedent's father took any interest he has in the pension plan and life insurance benefits long after the decedent

gave away his right to dispose of those plans in the divorce proceeding. Therefore, the father is in privity with the decedent and cannot take what the decedent did not have to give.

Because it is not necessary to resolve the New York law issues discussed in the majority opinion, I would not reach them. Moreover, I am concerned that looking beneath the state court's judgment, however innocuous in this instance, will lead to many claims in federal court that a state court judgment cannot function as a QDRO because the stipulation it incorporates was improperly executed. These contentions are properly the subject of a timely appeal or motion to reopen in state court and should not be addressed in federal court.