**KRAFT FOODS, INC., Plaintiff,**

**v.**

**ALL THESE BRAND NAMES, INC., Defendant.**

**No. 01 Civ. 2953(WCC).**

United States District Court, S.D. New York.

July 29, 2002.

O'Keefe & Lindgren, LLP, Attorneys for Plaintiff, White Plains, NY, Thomas K. Lindgren, Of Counsel.

Giddins, Claman & Langs, LLP, Attorneys for Defendant, New York City, Sandra E. Langs, Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Kraft Foods, Inc. ("Kraft") brings the instant action against defendant All These Brand Names, Inc. ("ATBN") for breach of contract. Plaintiff seeks damages in the amount of $585,500 allegedly owed by defendant for the purchase of products from Kraft's Cheese Division. Defendant now moves for summary judgment pursuant to FED. R. CIV. P. 56, arguing that plaintiff executed a general release discharging all claims against defendant, including those asserted in this action. For the reasons that follow, defendant's motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed unless otherwise indicated. Kraft is a multinational corporation that manufactures and sells food products in several countries. (Pl. Mem. Opp. Summ. J. at 1.) Kraft is organized into a number of different divisions, each of which is responsible for a different market sector. (Def. Rule 56.1 Stmt. ¶ 2.) The divisions all operate under the Kraft name and do not function independently, nor do they act as separate businesses. (*Id.* ¶ 5.) ATBN is in the business of mail-order sample sales. (*Id.* ¶ 1.)

Plaintiff and defendant conducted business for nearly a decade, during which time defendant purchased numerous Kraft products manufactured by several different Kraft divisions at deeply discounted prices. (*Id.* ¶¶ 10–11.) Of particular relevance here, ATBN conducted business with both the Beverage Division and the Cheese Division of Kraft.

In or about 1999, the relationship between the two companies began to sour. Kraft alleges that ATBN diverted some of the Kraft products into retail channels in violation of an agreement between the parties. (Pl. Rule 56.1 Stmt. ¶ 19.) After evaluating whether or not they desired to continue doing business with ATBN, and faced with internal pressure to achieve corporate financial goals, Kraft sought to collect on the outstanding debt owed by ATBN. (Def. Rule 56.1 Stmt. ¶ 19.) In return, and fearing that Kraft might bring suit on the diverting claim, ATBN insisted that Kraft release ATBN from all debts, obligations and claims between the parties. On February 18, 2000, the parties executed a document entitled "Notice of Cancellation & Mutual Release" (the "Release"). The relevant provision of the Release provides:

> By Agreement between Kraft General Foods and . . . All These Brand Names, Inc. . . . this instrument shall constitute both notice of termination effective on the date hereof with respect to all agreements between the parties, and a mutual release as set forth below.
>
> In consideration of the sum of $409,310.80 . . . to Kraft General Foods in hand paid by ATBN . . . [e]ach party does hereby remise release and forever discharge the other party and its past or present directors, officers, employees, servants, and agents of and from all debts, obligations, reckoning, promises, covenants, agreements, contracts, endorsements, bonds, specialties, controversies, disputes, suits, actions, causes of

action, trespasses, variances, judgments, extents, executions, damages, claims or demands in law or in equity, which each party ever had, nor has or hereafter can, shall or may have against the other party, relating to or in any way connected with agreements between the parties which are canceled by this instrument.

(Def. Rule 56.1 Stmt., Ex. I.) The Release was signed by Howard Martin in his capacity as President of ATBN and by Martin Gorman in his capacity as Director of Legal Services for Kraft. (*Id.*) There is no dispute that Gorman had authority to bind Kraft to the terms of the Release. (*Id.* ¶ 31.) Kraft determined the amount of the consideration for the Release and was paid by ATBN on February 17, 2000. (*Id.* ¶ 30). The memo field of the check made payable to Kraft from ATBN states: "Payment In Full—589658/589693/589766/594026." (Pl. Rule 56.1 Stmt., Ex. 4.) Each number references a particular invoice; the four invoices reflect a total debt owed Kraft in the amount of $409,310.80. (*Id.*) Three invoices are for the sale of beverages and one is for the sale of Bacon Bits. (*Id.*)

Prior to executing the Release, Gorman, as Director of Legal Services for the Beverage Division, initially tried to limit the Release to the Beverage Division only. Gorman testified that when he first received the proposed release he "felt it was glaringly unacceptable . . . because it was listing as the party Kraft General Foods [a]nd [his] first reaction was to mark it up and make it a release for the beverage division of Kraft Foods." (Gorman Dep. at 45.) Gorman could not recollect what he did with the edited draft containing the limiting language, but he does not dispute that he never discussed limiting the scope of the Release with ATBN and that some time thereafter he abandoned his attempt to limit the Release. (*Id.* at 61.) However, because Gorman understood that the

language of the Release could be construed as a general release, he conducted company-wide due diligence to determine any amounts owed by ATBN to any Kraft division. (*Id.* at 51; Def. Rule 56.1 Stmt. ¶ 36.) Specifically, Gorman sent email to six Kraft attorneys in the other Kraft divisions stating that ATBN "owe[s] Kraft $400,000 for recent Crystal Light and Bacon Bits purchases and [has] refused to pay us unless Kraft signs a general release protecting them from any breach of our agreements.... Obviously we can't sign for all of Kraft but I am interested to know if any other division is doing business with them beside Oscar Mayer and [the Beverage Division]." (Def. Rule 56.1 Stmt., Ex. K.) When questioned why he inquired about any debts owed to other Kraft divisions, Gorman testified that he "was concerned whether ... there were other businesses that I would be signing away or precluding Kraft from any rights it had vis-a-vis [ATBN]." (Gorman Dep. at 50.)

Gorman received responses from all six Kraft attorneys. The division of Kraft that markets and sells Bacon Bits responded that ATBN owed money on an invoice for the purchase of Bacon Bits. (*Id.* at 83.) The other Kraft attorneys, including the Director of Legal Services for the Cheese Division, did not indicate that any money was due to Kraft from ATBN. (Def. Rule 56.1 Stmt. ¶ 40.)

After the Release was executed, the Cheese Division uncovered an invoice dated November 11, 1999 in the amount of $585,500 that has not been paid by ATBN. (Pl. Rule 56.1 Stmt. ¶ 1.) This action followed. In the face of ATBN's defense that the Release discharged the debt, plaintiff argues that the Release was never intended as a general release, but was limited to the Beverage Division. In the alternative, plaintiff argues that the release is invalid on the basis of the unilateral mistake doctrine.

## DISCUSSION

### I. Summary Judgment Standard

Defendant moves for summary judgment pursuant to FED. R. CIV. P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991).

### II. Ambiguity

ATBN contends that the Release is an unambiguous general release that bars the instant claim and precludes the introduction of parole evidence as to the parties' intent in signing the Release. Kraft, on the other hand, argues that the

Release is ambiguous and that this Court should consider extrinsic evidence indicating that the Release was intended to be limited in scope to the Beverage Division. In the context of contracts,

> if an ambiguity in the contract exists, then summary judgment is generally improper, because the principles governing summary judgment "require that where contract language susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting."

*Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1097 (2d Cir.1992) (*quoting Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983)). However, "when a release is clear and unambiguous on its face and knowingly and voluntarily entered into, it will be enforced as a private agreement between the parties." *L & K Holding Corp. v. Tropical Aquarium*, 192 A.D.2d 643, 596 N.Y.S.2d 468, 469 (N.Y.App.Div.1993). Moreover, when a release is executed "in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if the language of the release is clear . . . the intent of the parties [is] indicated by the language employed" and parol evidence to the contrary is inadmissible. *See, e.g., Middle East Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 907 (2d Cir.1987); *K & S Co. v. Sexton Inv. Co.*, No. 96 Civ. 8741, 1999 WL 92284, at *5 (S.D.N.Y. Feb.18, 1999). In addition, "[w]hen the words of a release are of general effect the release is to be construed most strongly against the releasor." *Middle East Banking*, 821 F.2d at 907.

■ Here, we conclude that the Release is a facially clear and unambiguous general release. Contrary to Kraft's contention, the document contains no language expressly or impliedly limiting the scope of the Release to claims arising within the Beverage Division. The Release unambiguously calls for "Kraft General Foods to release ATBN" from all claims in consideration for payment of a definite sum of money. (Def. Rule 56.1 Stmt., Ex. I.) The language is as broad and general as it is clear, and there is no genuine dispute that plaintiff's claim falls within its confines. Furthermore, nothing within the four corners of the Release suggests an ambiguity that would permit this Court to look beyond the document to extrinsic evidence as to the parties' intent. We therefore conclude that ATBN's motion for summary judgment is granted with respect to this issue and, absent some evidence that the Release was "procured by fraud, duress, undue influence, or some other illegal means," *K & S Co.*, 1999 WL 92284, at *5, Kraft's claim for breach of contract is barred by the Release.

### III. *Unilateral Mistake*

Kraft seeks to avoid the Release under the doctrine of unilateral mistake. Specifically, Kraft contends that they executed the Release without understanding its significance and unaware of the outstanding debt owed to the Cheese Division and that ATBN either knew or should have known of their material mistake.

■ Under New York law, in order for a court to allow rescission of a contract on the basis of a unilateral mistake, "a party must establish that (i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was being made." *Ludwig v. NYNEX Serv. Co.*, 838 F.Supp. 769, 795 (S.D.N.Y.1993). If the party establishes a unilateral mistake as to a basic assumption of the contract, a court may "void releases even in the absence of fraud." *Middle East Banking*, 821 F.2d at

906; *see also The Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 939 (2d Cir.1998) ("as a basic proposition, a contract is made voidable by either unilateral or mutual mistake only where the asserted mistake concerns a 'basic assumption on which the contract was made.'") (citing RESTATEMENT (SECOND) OF CONTRACTS, §§ 152–53).

■ We hold that Kraft has presented sufficient evidence to demonstrate a genuine dispute of material fact as to whether the Release should be rescinded on the basis of unilateral mistake. Gorman stated that at the time he executed the contract, he understood that the entire outstanding debt owed Kraft amounted to $409,310.80. While Gorman was required to exercise ordinary care to discover any additional amount owed, *see, e.g., Banca Commerciale Italiana v. Northern Trust Int'l,* No. 95 Civ. 10700, 1997 WL 217591, at *7 (S.D.N.Y. April 30, 1997), we cannot conclude as a matter of law that he failed to do so. Recognizing the need to conduct a company-wide search, Gorman contacted his colleagues within the other Kraft divisions. The failure to uncover the outstanding debt was apparently due to the fact that the disputed invoice was negotiated by a consumer promotion group within the Cheese Division that was solely responsible for its collection. (Gorman Dep. at 102–03.) Based on the evidence before us, we cannot determine whether or not this debt should have been uncovered through the exercise of ordinary care. Furthermore, common sense dictates that, at minimum, there exists an issue of fact as to whether ATBN knew or should have known of Kraft's mistake. Assuming arguendo that ATBN was aware of its total outstanding debt of $994,810.80, there would be little reason for them to believe that Kraft would knowingly release all claims for less than half their value. This argument is buttressed by the fact that the amount cited in the Release is the precise total of the four invoices of which Gorman claims he was aware at the time the Release was signed. Moreover, the evidence suggests that ATBN was aware that the settlement amount was derived only from the four known invoices. Accordingly, defendant's motion for summary judgment is denied. However, in order for Kraft to ultimately prevail on their claim, they must take the steps necessary to rescind the Release. Furthermore, "to overcome the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties, evidence of a very high order is required." *George Backer Mgmt. Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978); *see also John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.,* 717 F.2d 664, 671 (2d Cir.1983).

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted in part and denied in part.

SO ORDERED.