**KOAM PRODUCE, INC., Petitioner–Appellant,**

v.

**DIMARE HOMESTEAD, INC., Respondent–Appellee.**

Docket Nos. 02–9023(L), 02–9103(CON), 02–9233(CON).

United States Court of Appeals, Second Circuit.

Argued: March 28, 2003.

Decided: May 9, 2003.

Charles E. Knapp, Law Office of Charles E. Knapp, P.C., New York, NY, for Petitioner–Appellant.

Lewis P. Janowsky, Rynn & Janowsky (Bart M. Botta, on the brief), Newport Beach, CA, for Respondent–Appellee.

Before: MCLAUGHLIN and B.D. PARKER, Jr., Circuit Judges, and GOLDBERG, Judge.*

---

* The Honorable Richard W. Goldberg, of the United States Court of International Trade,

## BACKGROUND

B.D. PARKER, JR., Circuit Judge.

This appeal challenges a reparations award under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, in favor of respondent DiMare Homestead, Inc. against petitioner Koam Produce, Inc. for price adjustments that Koam received on five shipments of tomatoes purchased from DiMare in April 1999. Koam and DiMare agreed to the price adjustments following inspections of the tomatoes by the United States Department of Agriculture (the "USDA"). Unbeknownst to DiMare at the time of the inspections, in other transactions the USDA inspectors had accepted bribes from wholesalers, including Koam, to downgrade the quality of the produce they inspected.

Koam sells produce at the Hunts Point Wholesale Produce Market in the Bronx, New York, and DiMare supplies produce to wholesalers such as Koam. When Koam received each of the five shipments of tomatoes, it claimed that they did not conform to the parties' contracts, and requested that the USDA inspect each shipment. PACA authorizes such inspections with respect to "the class, quality, and/or condition of any lot of any perishable agricultural commodity when offered for interstate or foreign shipment or when received at places where the Secretary [of Agriculture] shall find it practicable to provide such service." 7 U.S.C. § 499n(a) (1999). Three different USDA inspectors examined the five shipments, and on all five occasions the inspectors found the tomatoes to be substandard. As a result of these findings, Koam and DiMare agreed

to reduce the price for each shipment. The price reductions totaled $4800.

In October 1999, nine USDA inspectors at the Hunts Point market—including the three who inspected the tomatoes at issue in this appeal—were arrested and later pleaded guilty to accepting bribes from wholesalers' employees in exchange for reducing the grade of produce that they inspected, thereby permitting the wholesalers to pay lower prices for acceptable goods. Koam employee Marvin Friedman, along with a number of other wholesalers' employees, was arrested and pleaded guilty to bribing the USDA inspectors. None of the counts to which Friedman or the inspectors pleaded guilty involved the transactions between DiMare and Koam that are the subject of this appeal.

Following the criminal proceedings, the USDA sent letters to 17,000 members of the produce industry, including DiMare, informing them of the Hunts Point bribery scandal and of the administrative process whereby injured parties could file reparations claims for damages under PACA. DiMare thereafter instituted a reparations proceeding with the Secretary of Agriculture (the "Secretary"), seeking to recover the $4800 in price adjustments that Koam had received as a result of the USDA inspections. The parties submitted verified pleadings, briefs, affidavits, and documentary evidence.[1] The Office of the Secretary (William G. Jenson, Judicial Officer) made a number of findings of fact, determining that, with respect to each of the five shipments at issue, the parties agreed to price adjustments "[o]n the basis of the damage reported in the federal inspection." The Secretary also found that

sitting by designation.

1. They were not entitled to, and did not receive, an oral hearing. *See* 7 C.F.R. § 47.15(a)(1) (1999) ("Where the amount of the damages claimed, either in the complaint or in the counterclaim, does not exceed $30,000 (excluding interest), an oral hearing shall not be held . . . .").

"[t]here is no showing on this record that falsified inspections were issued as to the specific lots of tomatoes." The Secretary nevertheless concluded that: (1) all five of the parties' price adjustment agreements were voidable because of DiMare's unilateral mistake and Koam's misrepresentations regarding the integrity of the inspection process; and (2) Koam failed to prove that DiMare had breached the parties' sales contracts by shipping substandard tomatoes.

Koam appealed to the United States District Court for the Southern District of New York, where it was entitled to *de novo* review of the Secretary's decision. *See* 7 U.S.C. § 499g(c). Following a bench trial, at which the parties introduced documentary evidence but no live witnesses testified, the District Court (Louis L. Stanton, *Judge*) affirmed the decision of the Secretary. *Koam Produce, Inc. v. DiMare Homestead, Inc.*, 213 F.Supp.2d 314 (S.D.N.Y.2002) ("*Koam I*"). The court determined that the doctrine of mistake rendered the price adjustments voidable, and it rejected Koam's various arguments in favor of the truthfulness of the inspection certificates. *Id.* at 322–26. In a subsequent ruling, the District Court granted DiMare's motion for $73,250 in attorneys' fees. *Koam Produce, Inc. v. DiMare Homestead*, 222 F.Supp.2d 399 (S.D.N.Y. 2002) ("*Koam II*"). Koam appealed. We now affirm.

## DISCUSSION

■ Contrary to Koam's suggestion, our review of the District Court's factual findings is not *de novo*. Following a bench trial, we review the District Court's findings of fact for clear error and its conclusions of law *de novo*, even where, as here, the District Court did not hear any live witnesses. *See Connors v. Conn. Gen.*

*Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir. 2001) (holding that "findings of fact in a bench trial based on written submissions are accorded the same deference as factual findings that are otherwise determined"); Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .").

Koam raises two issues on appeal. First, Koam argues that the Secretary and the District Court erred in voiding the five price adjustments because DiMare failed to show that falsified inspection reports were issued with respect to the five shipments. Second, Koam argues that the District Court's award of $73,250 in attorneys' fees to DiMare was unreasonable, especially in light of the size—$4800—of DiMare's reparations award.

## I. The Price Adjustments

As noted above, the Secretary voided the five price-adjustment agreements on the basis of the common-law doctrines of misrepresentation and mistake, and concluded that Koam failed to prove that the tomatoes DiMare sold did not conform to the contracts. The District Court agreed with the Secretary that the doctrine of mistake rendered the price adjustments voidable and that Koam had failed to prove that DiMare breached the supply contracts, but the court did not address the doctrine of misrepresentation. On appeal, DiMare defends the judgment of the District Court on all three grounds, and Koam argues only that it satisfied its burden of proving that DiMare supplied nonconforming tomatoes.

■ We agree with the Secretary and the District Court that the five price-adjustment agreements are voidable under

the doctrine of mistake.[2]  A mistake is "a belief that is not in accord with the facts." Restatement (Second) of Contracts § 151. The Restatement provides:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>
>> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>>
>> (b) the other party had reason to know of the mistake or his fault caused the mistake.

*Id.* § 153.[3]  It is clear that, when the parties agreed to the price adjustments, DiMare was mistaken as to both whether Koam had paid bribes to USDA inspectors to influence the outcome of inspections and whether the USDA inspectors who examined the tomatoes had accepted bribes.

It is equally clear that these mistakes impacted the basic assumptions on which DiMare made the price adjustments and that the effect of the mistakes was both material and adverse to DiMare.  With respect to materiality, DiMare argues that, if it had known that a Koam employee had bribed USDA inspectors to downgrade produce, it would not have agreed to the price adjustments.  Koam seems to contest this factual assertion, arguing that DiMare agreed to price adjustments on other shipments without the benefit of any USDA inspections at all.  But this fact only reinforces DiMare's point: where (as here) DiMare did not agree to price adjustments in the absence of USDA inspections, DiMare was obviously relying on the integrity of those inspections.  That DiMare agreed to adjust its prices on other shipments is irrelevant.  It is also apparent that the mistake—DiMare's reliance on the integrity of the USDA inspections—adversely affected DiMare, as the inspections resulted in Koam's paying lower prices than it otherwise would have paid.

It is also clear that DiMare did not bear the risk of the mistake under § 154 of the Restatement.  Section 154 provides:

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which

**2.**  We do not address the applicability of the doctrine of misrepresentation because DiMare addressed it only in a footnote in its appellate brief.  *See, e.g., United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir.1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").  In any event, in light of our conclusion that the price-adjustment agreements are voidable under the doctrine of mistake, the doctrine of misrepresentation is not necessary to the outcome of this appeal.

**3.**  In *Albert Elia Building Co. v. American Sterilizer Co.*, 622 F.2d 655, 656–57 (2d Cir.1980) (per curiam), we quoted the substantially identical predecessors of Restatement §§ 153 and 154 as accurately reflecting New York law on unilateral mistake.  *See Middle E. Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 911 (2d Cir.1987) (Mahoney, Circuit Judge, concurring in part and dissenting in part); *cf. Kraft Foods, Inc. v. All These Brand Names, Inc.*, 213 F.Supp.2d 326, 330 (S.D.N.Y.2002) ("Under New York law, in order for a court to allow rescission of a contract on the basis of a unilateral mistake, a party must establish that (i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was being made." (citation and internal quotation marks omitted)).

the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154. First, none of the parties' agreements allocated the risk of the mistake to DiMare. Second, at the time the price-adjustment contracts were made, DiMare was not aware that Koam had compromised the integrity of the inspection process. Third, in light the fact that, unbeknownst to DiMare, Koam bribed federal officials, it would obviously be unreasonable to allocate the risk of the mistake to DiMare.

The final requirement of § 153 is also satisfied. Koam's fault obviously caused DiMare's mistake, as Koam knew that its employee had bribed USDA inspectors, yet Koam neglected to inform DiMare of this fact. In addition, in light of Koam's involvement in bribery (as demonstrated by Friedman's guilty plea), it would be unconscionable to enforce the price-adjustment agreements, which resulted from the work of inspectors who had accepted bribes. As all of the requirements of § 153 have been satisfied, we agree with the District Court and the Secretary that the five price-adjustment agreements are voidable.

Our analysis is not complete, as we must also determine whether Koam proved that DiMare breached the underlying contracts—which are unaffected by the voiding of the price-adjustment agreements—by supplying nonconforming tomatoes. Koam argues that, even though its employee Friedman had bribed USDA inspectors, and even though the inspectors who inspected the shipments of tomatoes at issue had accepted bribes, the DiMare tomatoes nonetheless failed to conform to the contract requirements, and the inspection reports were accurate.

■■■ Koam places considerable reliance on the Secretary's finding that "[t]here is no showing on this record that falsified inspections were issued as to the specific lots of tomatoes [in question]," arguing that DiMare cannot show that it delivered conforming tomatoes. Koam misplaces the burden of proof. DiMare need not prove that it delivered conforming tomatoes; rather, because Koam accepted the tomatoes, its burden is to prove that DiMare delivered non-conforming tomatoes. *See* N.Y. U.C.C. § 2–607(4) (McKinney 2001) ("The burden is on the buyer to establish any breach with respect to the goods accepted."); *see also Miron v. Yonkers Raceway, Inc.*, 400 F.2d 112, 117 & n. 13 (2d Cir.1968). In addition, Koam cannot rely on the Secretary's factual finding that the inspection certificates were not falsified. On *de novo* review, the District Court rejected this finding and, instead, found that "the inspections of which DiMare complains in this proceeding were performed by bribed inspectors, who falsified their results." *See Koam I*, 213 F.Supp.2d at 325. The District Court's findings are entitled to deference, while the Secretary's are not. *See Connors*, 272 F.3d at 135; 7 U.S.C. § 499g(c).

■■ While under PACA the inspection certificates upon which Koam relies ordinarily are "prima-facie evidence of the truth of the statements therein contained," 7 U.S.C. § 499n(a), the illegal conduct of both Koam and the inspectors who prepared the certificates eviscerated this prima-facie showing. Under these circumstances, Koam must adduce additional proof of the tomatoes' non-conforming quality. Koam offers the following: the fact that DiMare agreed to price adjustments on other shipments, suggesting that its tomatoes were generally of poor quality; affidavits of two Koam employees attesting to the accuracy of the inspections;

and the relatively low resale values that Koam obtained for the DiMare tomatoes.

As mentioned above, DiMare's willingness to adjust the prices of other shipments without inspections hardly proves the tomatoes' poor quality. Indeed, as the District Court noted, Koam failed even to prove that the uninspected shipments with respect to which DiMare agreed to adjustments were themselves defective. We agree with the District Court that "it is just as likely that DiMare granted the discounts to obtain the good will of this new customer, or in simple bargaining to consummate a sale, as that the discounts reflected genuine product defects." *Koam I*, 213 F.Supp.2d at 323. Regardless, even if the other, uninspected shipments were defective, DiMare's unwillingness, absent inspections, to adjust the prices of the five shipments in question suggests that they did not suffer the same defects.

The affidavits of the Koam employees, Doo W. Lee and Max Lee, are also insufficient. We need not determine, as the District Court did, that the affiants made clearly false statements regarding whether "any other employee of Koam" had bribed inspectors, *Koam I*, 213 F.Supp.2d at 323, since the affidavits, in any event, have little probative value. In declining to rely on them, the Secretary noted, "[w]e have often discounted testimonial evidence concerning the condition of perishable commodities and stated the necessity of obtaining a neutral inspection showing the exact extent of damage." The Secretary's reliance on neutral inspections is reasonable and well-founded. Moreover, Koam's contention that the requirement of neutral inspections unfairly penalizes it—because it is unable to obtain neutral inspections of the five shipments in question—is disingenuous. Koam rendered the inspections suspect in the first place by bribing the inspectors and then failing to disclose the bribery to DiMare. Consequently, Koam is not an innocent victim of the inspectors' dishonesty.

Koam's argument that the relatively low resale prices it obtained for the DiMare tomatoes are indicative of their poor quality also fails to persuade us. As the District Court noted, the inference that the low resale prices were caused by inferior quality "is no more probable than other speculations: poor salesmanship, market conditions, supply and demand, timing of sales, or the host of other factors that affect market price and performance." *Koam I*, 213 F.Supp.2d at 324. Moreover, Koam's contention that the tomatoes were of poor quality is contradicted by the fact that tomatoes from the same lots were shipped to numerous purchasers throughout the United States, including several at the Hunts Point market, and that Koam was the only purchaser who requested inspections or complained about quality. In light of all the evidence, the District Court's finding "that the inspections of which DiMare complains in this proceeding were performed by bribed inspectors, who falsified their results," *Koam I*, 213 F.Supp.2d at 325, is not clearly erroneous.

Lastly, we address Koam's equitable argument that our failure to find in its favor would penalize Koam "simply because USDA sent a corrupt inspector to perform the inspection (a decision over which Koam had no control) at the time that Koam was employing a faithless employee (who played no role in any of the DiMare inspections)." (Br. of Petitioner–Appellant at 21.) We view the equities differently from Koam, as its argument distorts the facts in at least three ways. First, it is not true that Koam had "no control" over which inspectors were assigned to perform the inspections. As the District Court noted, "the bribed inspectors concentrated towards inspections for those who had

bribed them" and "[t]he night shift supervisor facilitated the scheme by matching up inspectors who were taking bribes with wholesale receivers who were paying them." *Koam I*, 213 F.Supp.2d at 325 (quoting the USDA's Report and Analysis of the Hunts Point Bribery Incident). Thus, while Koam did not specifically assign the inspectors, the bribes that Friedman paid helped determine who would inspect the DiMare tomatoes. Similarly, Koam's assertion that Friedman "played no role in any of the DiMare inspections" is not completely accurate. In light of the District Court's findings, Friedman *was* involved in the DiMare inspections, at least indirectly, as his bribes helped determine which inspectors would be assigned. Third, Koam's attempt to distance itself from Friedman's criminality fails. Friedman was hardly a "faithless servant," since only Koam, not Friedman, stood to benefit from his bribes. Regardless, under PACA, "the act, omission, or failure of any agent, officer, or other person acting for or employed by any commission merchant, dealer, or broker, within the scope of his employment or office, shall in every case be deemed the act, omission, or failure of such commission merchant, dealer, or broker ...." 7 U.S.C. § 499p. Thus, Friedman's acts—bribing USDA inspectors—are deemed the acts of Koam.

In summary, we agree with the District Court that the parties' five price-adjustment agreements are voidable under the doctrine of mistake and that Koam has failed to prove that DiMare breached the parties' supply agreements by shipping substandard tomatoes.

## II. Attorneys' Fees

Following trial in the District Court, DiMare moved pursuant to 7 U.S.C. § 499g(c) for an award of attorneys' fees totaling $73,250, and the court awarded that amount. Section 499g(c) provides that, when a party adversely affected by a judgment of the Secretary of Agriculture appeals the Secretary's decision to a district court, "[a]ppellee shall not be liable for costs in said court and if appellee prevails he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of his costs." Koam does not dispute that DiMare is entitled to its reasonable attorneys' fees. Rather, Koam's arguments concern the reasonableness of the District Court's fee award. "Our review of an award of attorneys' fees is highly deferential to the district court; we will reverse on appeal only for an abuse of discretion." *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 437 (2d Cir.2002) (citation and internal quotation marks omitted).

Koam argues that we should vacate the District Court's fee award for three reasons: (1) DiMare acted unreasonably in employing both California and New York counsel; (2) the District Court did not analyze the billing records of DiMare's counsel and did not address Koam's specific objections to the fees sought; and (3) the fees that the District Court awarded ($73,250) far exceed DiMare's damages ($4800). All of Koam's arguments are without merit.

■ First, we agree with the District Court's conclusion that "[t]here is no *a priori* reason why an out-of-state shipper should be compelled to rely solely upon New York counsel, with whom it is almost sure to be unfamiliar. Representation by out-of-state counsel should be viewed as the normal course of business, not a luxury." *Koam II*, 222 F.Supp.2d at 401 (citing *Frankie Boy Produce Corp. v. Sun Pacific Enterprises*, 2000 WL 1532914, at *2 (S.D.N.Y.2000)). DiMare is entitled to the counsel of its choice, and there is nothing unreasonable about an out-of-state par-

ty choosing to employ both out-of-state and local counsel.

■ Second, contrary to Koam's argument, the District Court did review Koam's specific objections to the fee application, *see Koam II*, 222 F.Supp.2d at 401 ("Most of Koam's remaining objections are inconsequential ....."), and the court explicitly found that the rates charged by both law firms were reasonable. *Id.* Koam does not complain of any particular "line items" or expenditures by DiMare's counsel, and we see no basis for doubting the reasonableness of the District Court's award with respect to any such item.

■ Third, and finally, the claimed disproportionality between DiMare's fees and its damages does not render the size of the fee award unreasonable. As we have done in the context of the fee-shifting provision of Title VII of the Civil Rights Act of 1964, we "reject[ ] the notion that an award of attorneys' fees be proportional to the amount of damages recovered." *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 160 (2d Cir.1992). It is likely because the damages in PACA actions are often so small that Congress found it necessary to enable successful appellees to recover the fees they incur in defending decisions of the Secretary on appeal. Absent a provision that shifts all of the reasonable fees incurred by a successful appellee, it would often be too expensive for parties who prevail in PACA actions to defend their victories on appeal. As the District Court noted, "[i]f the costs of defending its favorable decision by the Secretary were not reimbursed to a prevailing appellee, then the losing party could destroy the value of the Secretary's award, by merely noticing an appeal." *Koam II*, 222 F.Supp.2d at 401. Because Koam has made no showing that the fees awarded to DiMare are unreasonable, we see no abuse of discretion.

Accordingly, we affirm the District Court's fee award.

## CONCLUSION

For these reasons, we affirm the judgment of the District Court.