OCE NORTH AMERICA,
INC., Plaintiff,

v.

Dominic CAPUTO, Defendant.

No. 05–81067CIV.

United States District Court,
S.D. Florida.

Jan. 31, 2006.

As Amended Feb. 10, 2006.

Joseph F. Rodkey, Jr., Reed Smith Shaw & McClay, Pittsburgh, PA, James O'Resta Murphy, Jr., Byrd & Murphy, Fort Lauderdale, FL, for Plaintiff.

Nickolas Charles Berry, Hinshaw & Culbertson, LLP, Fort Lauderdale, FL, for Defendant.

## AMENDED[1] ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Preliminary Injunction, filed herein on December 7, 2005 [DE–7], Defendants' Memorandum in Opposition to Plaintiff's Motion, filed herein on January 3, 2006 [DE–32], and Plaintiff's Reply to Defendants' Opposition, filed

herein on January 4, 2006 [DE–35]. After carefully considering the Motion, having heard the argument of counsel, and being otherwise fully advised in the premises, the Court finds as follows:

## I. BACKGROUND

Plaintiff Océ North America, Inc. ("Oce") is a corporation organized under the laws of the Delaware with its headquarters in Chicago, Illinois. Oce's Digital Documents Systems division has offices in Boca Raton, Florida. Oce is a supplier of print and document management and delivery technology including software, printers, copiers, plotters and scanners. Defendant Dominick Caputo is a citizen of New York and is currently employed by Kodak–Versamark, a competitor of Oce North America.

Prior to his resignation on September 23, 2005, Defendant had been an employee of Oce and its predecessor company for approximately 20 years. Until 2004, Caputo held the position of Vice President for the Eastern Sales Area and was responsible for supervising approximately 75 salespeople and managers. In late 2004, Malkon Baboyian, President of Oce's Digital Document Systems Division, named Caputo as Vice President of Strategic Accounts as part of a division restructuring. As a result, Caputo was responsible for supervising only six salespeople and managers, but received a three percent increase in base salary. Following the changes to his position and job responsibilities, Caputo expressed dissatisfaction with his position.

Defendant's compensation at Oce consisted of a base salary of $195,000, bonuses paid if the established sales targets were met, as well as additional benefits such as

---

1. This Order amends only the service list on the final page. [Editor's Note: service list is not included in print.]

a car allowance and participation in stock option plans. In late 2004, Caputo was presented with a compensation package compiled by Oce's Bill Mayer, Vice President of Oce's Human Resources Department. The package contained information regarding salary and bonuses, a car lease program, and an "Award Certificate" granting an option to participate in Oce's Stock Appreciation (Phantom) Plan (hereinafter "the Plan" or "the Agreement"). The Award Certificate contained language stating that "Awardee acknowledges that a copy of the Plan and a summary thereof have been provided to the Awardee ... the Awardee has read the Plan and this Award Certificate and understand the terms and conditions contained therein and ... will abide by the obligations of the confidentiality and noncompetition (sic) set forth in the Plan." Caputo signed the Certificate and returned it to Mayer in December, 2004. The Plan referenced in the Award Certificate consists of eight pages of "Plan Highlights" and an eleven-page appendix. The Appendix contains detailed provisions regarding noncompetition and nondisclosure obligations under the Plan, which, generally stated, prohibit employment for a two-year period by a business that competes with Oce, in the geographical regions where such business is conducted. The Appendix also states that Oce is entitled to seek injunctive relief in the event of a breach of the noncompetition and nondisclosure provisions.

On September 23, 2005, Caputo announced his voluntary retirement from Oce, and he began employment at Kodak–Versamark ("Kodak") in October. On December 7, 2005, Oce filed the instant Motion for Preliminary Injunction seeking an injunction prohibiting Caputo from continuing his employment with Kodak. Oce claims that Caputo has breached the non-competition and nondisclosure agreements by commencing employment Kodak, a competitor of Oce. Oce claims that Caputo signed the Award Certificate acknowledging receipt of the Plan and compliance with its noncompete and nondisclosure provisions. Oce asserts that the non-compete agreement is valid being reasonable in scope and serving to protect legitimate business interests Oce also claims that Caputo, as an employee in a high level executive position, had access to confidential trade secret information which would be harmful to Oce if disclosed to a competitor like Kodak.

Caputo contends that the Stock Appreciation Plan agreement is not enforceable. He asserts that although he signed the Award Certificate, admittedly without having read it, he never received a copy of the Plan itself and was mistaken and misled as to its contents. Caputo asserts that he was never been informed of the non-competition provisions of the Plan and received only the document labeled "Award Certificate" without an attached copy of the Plan itself. He further argues that upon later requesting a copy of the Plan, Mr. Mayer sent him a copy of the Plan Highlights only, which described forfeiture of stock options for violating the non-competition agreement but did not include the detailed non-competition provisions set forth in Appendix A. He asserts that his mistake as to the Plan's contents and consequences and Oce's failure to disclose its material terms invalidates the contract and, therefore, a preliminary injunction is not appropriate.

## II. DISCUSSION

In order to obtain a preliminary injunction, a plaintiff must establish the following four elements: (1) the moving party demonstrates a substantial likelihood of success on the merits; (2) the preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury out-

weighs the harm the preliminary injunction would cause to the non-moving party, and (4) the preliminary injunction would not be adverse to the public interest. See *Parker v. State Bd. of Pardons and Paroles,* 275 F.3d 1032, 1034–35 (11th Cir.), *cert. denied,* 534 U.S. 1072, 122 S.Ct. 679, 151 L.Ed.2d 591 (2001) (citing *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.), *reh'g denied,* 778 F.2d 793 (11th Cir.1985)); *see also Warren Publ'g, Inc. v. Microdos Data Corp.,* 115 F.3d 1509, 1516 (11th Cir.), *cert. denied,* 522 U.S. 963, 118 S.Ct. 397, 139 L.Ed.2d 311 (1997); *Teper v. Miller,* 82 F.3d 989, 992 n. 3 (11th Cir.1996); *Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir.1995) (citing *Gresham Park Cmty. Org. v. Howell,* 652 F.2d 1227, 1232 n. 7 (5th Cir.1981)). The plaintiff has the burden of persuasion as to each of these four elements. *Id.; U.S. v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir. 1983), *reh'g denied,* 724 F.2d 978 (11th Cir.1984).

A. Likelihood of Success on the Merits

 In determining whether to enter a preliminary injunction, the first element, the likelihood of success on the merits, is generally considered the most important. *Garcia–Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir.1986). A failure to meet this first element can defeat the party's request for a preliminary injunction regardless of its ability to establish any of the other elements. *Haitian Refugee Ctr. v. Christopher,* 43 F.3d 1431, 1432 (11th Cir. 1995). Although entering an injunction is within the discretion of the district court, it is an "extraordinary remedy" which should only be granted if the movant carries the burden of persuasion on its claims. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir.2003).

Here, Plaintiff seeks a preliminary injunction barring Defendant Caputo from continuing employment with Kodak–Versamark pursuant to the terms of the non-compete agreement. Defendant asserts that Plaintiff has not established a substantial likelihood of success on the merits because it has not established the non-compete agreement is enforceable. Defendant asserts that the agreement is not enforceable due to unilateral mistake, lack of mutual assent, and fraud. While ultimately Defendant may have the burden of proving these defenses to prevent enforcement of the contract, at this stage of the proceedings Plaintiff has the burden of establishing a substantial likelihood of success on the merits by showing it can overcome these defenses. Based on the parties' briefs and the evidence submitted at the January 6, 2006, hearing on Plaintiff's motion, the Court finds that Defendant has posited valid defenses to the contract which Plaintiff has not established a substantial likelihood of success in overcoming. Accordingly, the Court will deny Plaintiff's Motion for Preliminary Injunction.

The Court notes that the parties disagree as to what law should govern the Court's analysis. Plaintiff asserts that Delaware law governs this action pursuant to paragraph 13 of Appendix to the Stock Appreciation Plan. Defendant asserts that, under Florida choice of law rules, New York law should apply under the doctrine of *lex loci contractus.* The Court need not make a conclusive determination of this issue at this early stage in the proceedings. Based on evidence submitted thus far, however, it seems more probable that New York law should govern. The Eleventh Circuit Court of Appeals recently held that application of the law of the state where the person against whom a noncompete is being enforced lives and works, and where the effects of the enforcement will be felt, is permissible in analyzing a

non-competition agreement. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir.2005). Morever, under both New York and Delaware law, Plaintiff has not met its burden in showing a substantial likelihood of success that it will overcome the defenses set out by Defendant.

### 1. Unilateral Mistake

■■■■ Defendant argues that the non-compete agreement of the Stock Appreciation Plan is voidable due to a unilateral mistake. Under New York law, a party to a contract seeking rescission based on a unilateral mistake must establish that he entered into the contract under a mistake of material fact, and that the other contracting party either knew or should have known that such a mistake was being made. *Kraft Foods v. All These Brand Names, Inc.*, 213 F.Supp.2d 326, 330 (S.D.N.Y.2002). A contract is voidable by unilateral mistake only where the assented mistake concerns a basic assumption on which the contract was made. *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2nd Cir.1998)(citing RESTATEMENT (SECOND) OF CONTRACTS, § 153).

■■■ Defendant asserts that he is entitled to a rescission or a reformation of the Agreement due to a mistake of fact regarding the consequences for breach of the non-compete covenant. Defendant contends that he signed the Award Certificate under the mistaken notion that it was merely a stock incentive plan and would not have any impact on his ability to seek outside employment. Defendant's mistake was regarding a basic assumption of the contract, specifically the existence and terms of the noncompetition and nondisclosure provisions and Caputo's obligations under those terms. The evidence presented at the January 6, 2006, hearing supports Defendant's argument that Plaintiff knew or should have known that he signed the Agreement under a mistake of fact. Defendant testified that he had indicated to Oce executives on several occasions an unwillingness to sign a non-compete, Plaintiff, either intentionally or unintentionally, failed to provide him with a copy of the Plan containing the noncompete provisions, and Caputo notified Mayer that he had not received the Plan after sending the Certificate back to Human Resources. Plaintiff was unable to controvert this testimony and show that Defendant did receive a copy of the Plan. Moreover, Mayer testified that it was his general practice to include a cover letter regarding benefits to Oce executives that includes a list of attached documents and includes mention of the Plan if a copy of that document was enclosed. Mayer acknowledged that the letter to Caputo does not list the Plan in its list of enclosures, supporting Caputo's testimony that he was not sent a copy of the Plan itself. Plaintiff, in failing to provide Caputo with the complete Agreement, either knew or should have known that Defendant was mistaken as to its terms when he signed the contract document, with no additional documentation attached. Defendant has set out a valid defense to enforcement of the non-compete Agreement based on unilateral mistake. Plaintiff has not met its burden in overcoming Defendant's unilateral mistake defense and has not established a substantial likelihood that the contract is enforceable.

■■■ Even under the more stringent test for rescission under Delaware law, the Court finds that Plaintiff has not shown a substantial likelihood of success in overcoming Defendant's unilateral mistake argument. Under Delaware law, a party may seek rescission if: 1) the enforcement of the agreement would be unconscionable; 2) the mistake relates to the substance of the consideration; 3) the mistake occurred regardless of the exercise of ordinary care;

and 4) it is possible to place the other party in the status quo. *In Matter of Appraisal of ENSTAR Corp.*, 604 A.2d 404, 411 (Del.1992). In this case, prongs 1, 2 and 4 appear at this stage to be met, given Caputo's asserted lack of knowledge of its terms based on Plaintiff's failure to provide the Plan documents and the materiality of the mistake. Though it is difficult to say that Defendant exercised ordinary care in signing the Agreement, the third element has been read to take into consideration which party is most responsible for the material mistake. *See Ryan v. Weiner*, 610 A.2d 1377, 1385 (Del.Ch. 1992). Here, although Defendant admits he did not read the Award Certificate at the time he signed it, it was Plaintiff's failure to provide Caputo with a copy of the Plan that resulted in his mistake of fact. Additionally, Caputo testified that he requested a copy of the Plan after signing the certificate and was provided with only an incomplete document. Plaintiff has not, at this stage, shown Defendant's defense to be invalid and has not established a likelihood of success.

### 2. Mutual Assent

 Defendant also asserts that the Agreement is unenforceable because there was a lack of mutual assent between the parties. A contract is unenforceable where there is no meeting of the minds as to the terms of the contract. *Brands v. Urban*, 182 A.D.2d 287, 587 N.Y.S.2d 698, 700 (1992); *Rodgers v. Erickson Air–Crane Co., L.L.C.*, 2000 WL 1211157, *6 (Del.Super.Ct.2000). Courts look to the terms of the parties' written agreement to determine whether mutual assent has occurred. *Int'l Paper Co. v. Suwyn*, 966 F.Supp. 246, 254 (S.D.N.Y.1997).

 Here, the terms of the Agreement are found in Appendix A of the Stock Appreciation Plan, which was incorporated by reference into the Award Certificate. Writings referred to in a written contract maybe incorporated by reference as part of the contract, and the two instruments will be considered together as the agreement of the parties. *See Jones v. Cunard S.S. Co.*, 238 A.D. 172, 263 N.Y.S. 769, 771 (App.Div.1933); *Star States Dev. Co. v. CLK, Inc.*, 1994 WL 233954, * 4 (Del.Super.Ct.1994). A party will not be bound to the terms of any document unless the document and its terms are clearly identified in the agreement, however. *Chiacchia v. Nat'l Westminster Bank USA*, 124 A.D.2d 626, 507 N.Y.S.2d 888, 890; *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2nd Cir.1996). Moreover, "in order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Lamb v. Emhart Corp., B & D, Inc.*, 47 F.3d 551, 558 (2nd Cir.1995); *see also Merchantwired, LLC v. Transaction Network Servs., Inc.*, 2005 WL 468241, * 5 (Del.Super.Ct.2005); *Bybyk*, 81 F.3d at 1201.

 Defendant asserts that he did not receive a copy of the Stock Appreciation Plan at the time he signed the Award Certificate and therefore the references in the Certificate to non-compete provisions are ambiguous. Plaintiff counters that the Certificate expressly incorporates the Plan by reference and the Certificate states that the Awardee acknowledges and agrees to the terms of the Plan. Based on evidence provided thus far, however, it does not appear that Plaintiff effectively incorporated the Plan document. Caputo could not have had knowledge of the terms of the incorporated document or assented to them without ever having had an opportunity to read the terms or have them explained to him. At this time, Plaintiff has not provided evidence to show that the Plan was attached to the Certificate or to

contradict Caputo's assertion that he did not receive a copy of the Plan and that the terms referenced in the Certificate are ambiguous. Accordingly, Plaintiff has not shown that it can succeed in establishing a meeting of the minds between the parties as to the non-compete and nondisclosure provisions of the Plan.

### 3. Fraud in the Factum

 Defendant also contends that the Agreement is not enforceable due to fraud committed in its·execution. Fraud in the execution of a contract, known as fraud in the factum, renders a contract void. *Langley v. FDIC,* 484 U.S. 86, 93, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *see also Simms v. Biondo,* 816 F.Supp. 814, 824 (E.D.N.Y.1993); *Dougherty v. Miec-zkowski,* 661 F.Supp. 267, 274 (D.Del.1987) ("if misrepresentation of character or essential term of contract", "no effective manifestation of assent and no contract at all" (quoting RESTATEMENT (SECOND) CONTRACTS § 163, cmt. a)). Fraud in the factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley,* 484 U.S. at 93–94, 108 S.Ct. 396. Defendant contends that he was misled as to the contents of the Plan and signed an instrument different from what he understood it to be. Defendant asserts that he was provided with the Award Certificate only, not a copy of the Plan, and later upon requesting the Plan was given only the Plan Highlights which describe only the stock forfeiture aspects of any non-competition provisions, misleading him further as to his obligations under the Agreement. The Certificate was presented in the context of a benefits package, with the only one reference to noncompetition obligations found in the text of the Award Certificate itself with no further explanation. These factors caused Caputo to sign the contract "with-

out true knowledge of its true nature or contents."

Based on evidence presented at the hearing, the Court finds that Plaintiff has provided the necessary quantum of evidence to show that Malkon Baboyian was not involved in any fraud in connection with Caputo's signing the award certificate. Plaintiff has not, however, made such a showing with regard to Bill Mayer, Vice President of Human Resources. Accordingly, the Court concludes that Plaintiff has not succeeded in overcoming Defendant's fraud defense at this time.

### B. Irreparable Harm and Balance of the Equities

 Having found that Plaintiff has not shown a substantial likelihood of success on the merits, the Court need not analyze the remaining elements of the test for issuance of a preliminary injunction. Nevertheless, the Court also notes that the three additional elements of the preliminary injunction analysis do not weigh in favor of issuing an injunction here. First, Plaintiff has not shown that irreparable harm will result if an injunction is not issued. Whatever confidential information Defendant possess at the time of his resignation was of value for only a limited period of time and has not yet shown that any actual and imminent harm. Second, a careful consideration of the relative harms between the parties does not weigh in favor of an injunction. Some harm will result to both parties depending on the issuance of a preliminary injunction. The balance of equities appears to weigh in favor of the Defendant, however. Oce was the party in the best position to have avoided the current situation by more careful drafting of the Agreement and ensuring that the terms of the non-compete were provided to Caputo. Enforcement of the non-compete would cause Caputo to

lose his current employment and only source of income in exchange for stock options worth only a few thousand dollars under the terms of the Plan. Finally, based on the balance of other factors in this matter, the public interest would not be served by issuance of a preliminary injunction.

### III. CONCLUSION

In order to obtain preliminary injunctive relief, Plaintiff has the burden of establishing, among other things, a substantial likelihood they will prevail on the merits. While the plaintiffs may very well prevail in the present action in the end, the Court concludes that the plaintiffs have failed to carry their burden of showing that the extreme remedy of a preliminary injunction is appropriate here. Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction, filed herein on December 7, 2005 [DE–7], is hereby **DENIED.**